# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

B.D., a minor, by and through his )
Parents and next friends, Anne and )
Brantley Davis, *et al.*, )
               )
        Plaintiffs, )
               )
    v. )
               )
DISTRICT OF COLUMBIA, )
               )
        Defendant. )
               )

**FILED**

**DEC 03 2014**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Civil Case No. 12-0934 (RJL)

## MEMORANDUM OPINION
(December 2, 2014) [Dkt. ##38, 41]

Plaintiffs Anne and Brantley Davis—as parents and next friends of their son,

B.D.—(together "plaintiffs") commenced this action against the District of Columbia

("defendant" or "the District") pursuant to the Individuals with Disabilities Education Act

("IDEA"), 20 U.S.C. § 1400 *et seq.*, on June 7, 2012, seeking review and enforcement of

an administrative due process hearing officer determination ("HOD"), as well as related

attorney's fees and costs. *See* Compl. [Dkt. #1].[1] Now before the Court are the parties'

cross-motions for summary judgment. *See* Pls.' Mot. Summ. J. [Dkt. #38]; Def.'s Cross-

Mot. Summ. J. [Dkt. #41]. Upon consideration of the parties' pleadings, relevant law,

and the entire record in this case, the Court GRANTS, in part, and DENIES, in part,

---

[1] Plaintiffs filed a Second Amended Complaint—with leave of the Court—on September 23,
2013. *See* Fed. R. Civ. P. 15(a)(2); *see also* Second Amended Complaint ("Am. Compl.") [Dkt.
#29].

plaintiffs' Motion for Summary Judgment, and GRANTS, in part, and DENIES, in part, defendant's Cross-Motion for Summary Judgment.

## BACKGROUND

B.D. is a disabled student entitled to special education under the IDEA. B.D.'s disabilities include specific learning disabilities, attention deficit hyperactivity disorder, various physical health problems, gross and fine motor coordination issues, behavioral problems, sensory dysregulation and inadequate social skills. *See* Plaintiffs' Statement of Material Facts as to Which No Genuine Issue Exists ("Pls.' Facts") ¶¶ 2, 5 [Dkt. #38-1]; Def.'s Mot. Summ. J. at 4-5. B.D. attended the Kingsbury Day School ("Kingsbury") from 2007-2009. *See id.* ¶¶ 3, 6. On June 9, 2009, however, a new individualized education plan ("IEP") was developed for B.D., and it was determined that Kingsbury could no longer meet B.D.'s special education needs in accordance with the updated IEP. *See id.* ¶ 7; Administrative Record ("AR") at 560 [Dkt. ##31-33]. From October 21, 2009 until August 29, 2011, B.D. received in-home instruction and therapy provided through District of Columbia Public Schools ("DCPS"). *See* Pls.' Facts ¶ 10.

At the beginning of the 2011 school-year, B.D. attended the Katherine Thomas School ("KTS") for a 30-day trial, which ended unsuccessfully in October, 2011. *See id.* ¶¶ 12, 13; AR at 183. On October 11, 2011, DCPS held an IEP meeting and developed a new IEP requiring that B.D. receive 26.6 hours per week of specialized instruction, two hours per week of speech-language therapy, three hours per week of occupational therapy, and two hours per week of behavioral support services. *See* AR at 294. The IEP team recommended B.D.'s placement at The Children's Guild—a private, full-time

special education school in Maryland. *See* Pls.' Facts ¶¶ 26, 30. The Davises rejected

this offer and continued to provide in-home tutoring and occupational therapy at their

own expense. *See* Pls.' Facts ¶¶ 30, 61-64.

Following evaluations on October 6-10, 2011, Gladys M. Sweeney—a licensed

psychologist hired by plaintiffs—completed a psychological assessment of B.D. and

recommended evaluating and treating B.D. at a therapeutic in-patient treatment facility.

*See* AR 278-79. At an IEP meeting held on November 29, 2011, DCPS agreed to refer

B.D. to the Department of Mental Health ("DMH") Psychiatric Residential Treatment

Facility ("PRTF") for assessments. *See* AR at 490-92.

On January 9, 2012 plaintiffs filed a due process complaint seeking relief for

DCPS's alleged failure to provide B.D. with a free appropriate public education

("FAPE"), and challenging its suggested placement of B.D. at The Children's Guild as

inappropriate. *See* Pls.' Facts ¶ 82; AR 409-414. The hearing officer issued his HOD on

March 9, 2012, finding that B.D. was denied a FAPE from August – October 2011,

because DCPS had not provided an appropriate IEP, nor an appropriate educational

setting. *See* AR at 28. Moreover, the hearing officer found that B.D. was also denied a

FAPE from October 2011 to 2012, because the IEP in place was outdated, it did not rely

on sufficient baseline or evaluative data, and because the proposed school would employ

behavioral tactics similar to those determined to be ineffective at B.D.'s previous school.

*See* AR at 31.

The HOD ordered defendant to reimburse plaintiffs for all educational services

provided by their Occupational Therapist and Tutor from October 11, 2011 "through the

present," and to provide B.D. with occupational therapy for five hours a week for three

months. *See* AR at 39. The HOD further ordered defendant to immediately reconvene

B.D.'s IEP team to determine which assessments were appropriate, and that such

assessments were to be completed within sixty days of the issuance of the HOD. *See id.*

The IEP team was ordered to convene within ten days of the assessments' completion.

*See id.*

  DMH's PRTF review committee reviewed B.D. pursuant to DCPS's March 2012

referral, and determined that B.D. required placement in residential treatment facility.

*See* Pls.' Facts ¶ 105. Plaintiffs independently sought and obtained B.D.'s acceptance at

Wediko Children's Center, an in-patient facility in New Hampshire that could

accommodate B.D.'s psychological and education needs. *See id.* at ¶¶ 112-13. Due to

B.D.'s continued behavioral deterioration, however, Wediko withdrew its acceptance.

*See id.* ¶ 115. After determining that no public school program could meet B.D.'s needs,

the Office of the State Superintendent of Education ("OSSE") began searching for a

residential treatment facility. *See id.* ¶ 158. Three residential treatment facilities

expressed interest in B.D. *See id.* ¶ 159. Defendant contends that one of the residential

treatment facilities—the Eagleton School in Massachusetts ("Eagleton")—is appropriate

for B.D., can implement his IEP, and has offered acceptance to B.D. *See* Def.'s Cross-

Mot. Summ. J. at 25; *id.*, Ex. 3 (April 4, 2014 Eagleton School acceptance letter).

Plaintiffs, however, contest Eagleton's appropriateness for B.D. in a related case. *See*

*B.D. v. District of Columbia*, Civ. No. 13-01223-RJL (D.D.C. filed Aug. 8, 2013) ("*B.D.*

*II*").

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate

when the evidence in the record demonstrates that "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When evaluating

cross motions for summary judgment, "the court shall grant summary judgment only if

one of the moving parties is entitled to judgment as a matter of law upon material facts

that are not genuinely disputed." *Select Specialty Hosp. – Bloomington, Inc. v. Sebelius*,

774 F. Supp. 2d 332, 338 (D.D.C. 2011) (citation omitted).  The court must accept as true

the evidence of, and draw "all justifiable inferences" in favor of the party opposing

summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A

genuine issue exists only where "the evidence is such that a reasonable jury could return

a verdict for the nonmoving party." *Id.* at 248.

## ANALYSIS

The relief sought by plaintiffs in this action is three-fold.  They seek judicial

review of portions of the March 9, 2012 HOD; they ask this Court to enforce defendant's

compliance with the HOD, including an injunction ordering DCPS to identify an

appropriate in-patient therapeutic treatment facility for B.D.; and they seek attorney's

fees and costs as prevailing parties in their due process hearing.  As discussed more fully

below, I find that summary judgment in favor of the District is appropriate on Counts I, II

and III of the Second Amended Complaint, and summary judgment in favor of plaintiffs

is appropriate on Count IV.

**I.     Review of March 9, 2012 HOD**

Plaintiffs seek judicial review of the March 9, 2012 HOD, insofar as the hearing

officer failed to "properly address B.D.'s need for compensatory services, or to direct

DCPS as to the specific services B.D. was to receive during the assessment and IEP

development period." Am. Compl. ¶ 62.

Judicial review of a hearing officer's determination is based on a preponderance of

the evidence, while granting some level of deference to the hearing officer's decision.

*See Lyons v. Smith*, 829 F. Supp. 414, 417 (SSH) (D.D.C. 1993) (noting that reviewing

courts must "give 'due weight' to the administrative proceedings and afford some

deference to the expertise of the hearing officer and school officials responsible for the

child's education"). Courts should not "reverse the hearing officer's findings simply

because [the court] disagree[s] with them." *Bd. of Educ. of Arlington Heights Sch. Dist.*

*No. 25 v. Ill. State Bd. of Educ.*, 2001 U.S. Dist. LEXIS 6994, at 12 (N.D. Ill. March 19,

2001). Moreover, the party challenging the hearing officer's decision bears the burden of

proving that the hearing officer decided against a preponderance of the evidence.

*Angevine v. Smith*, 959 F.2d 292, 295 (D.C. Cir. 1992); *Kerkam v. McKenzie*, 862 F.2d

884, 887 (D.C. Cir. 1988); *see also S.H. v. State-Operated Sch. Dist. of the City of*

*Newark*, 336 F.3d 260, 270 (3d Cir. 2003) (reviewing court is "required to defer to the

ALJ's factual findings unless it can point to contrary nontestimonial [sic] extrinsic

evidence on the record"). Plaintiffs here have made no such showing.

Plaintiffs allege that the hearing officer erred by failing to appropriately address

B.D.'s entitlement to compensatory education, refusing to order the full diagnostic

program recommended for him in the 2011 psychological and psychiatric reports, and

failing to adequately identify the services B.D. was to receive until a proper IEP was

developed. *See* Compl. ¶¶ 60-63. I disagree. The hearing officer  dedicated

approximately six pages of the HOD to a discussion of his reasoning for directing the

amount of compensatory education he ordered. *See* AR at 32-38. He specifically

discussed the types of occupational therapy being provided to B.D., and found that five

hours per week of such therapy was the appropriate amount. *See* AR at 33. Finding that

B.D. was not provided these services after October 11, 2011, the hearing officer awarded

him five hours a week of occupational therapy for three months as compensatory

services. *See* AR at 34.

The hearing officer then discussed plaintiffs' requested remedy of B.D.'s

placement at the Meridell Achievement Center (a residential treatment center). *See* AR at

34-37. The hearing officer specifically addressed how Meridell was not only not

appropriate for B.D., but is also considered "akin to hospital services that are specifically

excluded from the IDEA." AR at 36. Finally, the hearing officer agreed with plaintiffs

that further assessment of B.D. was needed, and ordered the defendant to reconvene the

IEP team to determine what specific assessments were necessary. *See* AR at 37. The

hearing officer also ordered 1:1 home instruction for two hours per day, five days a week.

*See* AR at 38. Based on the above, the Court cannot conclude that the hearing officer

decided this case against a preponderance of the evidence.

## II.    Enforcement of March 9, 2012 HOD

In Count II, plaintiffs seek an order "directing the District to fully comply with all portions of the HOD that imposed obligations on DCPS."[2]  Am. Compl. ¶ 66.  However, while the IDEA creates a right of action for a party to challenge an adverse decision of an impartial hearing officer, it does not create a cause of action to challenge the *implementation* of a favorable HOD.  Following a due process hearing, "[a]ny party *aggrieved by* the findings and decisions made [in an HOD] shall have the right to bring a civil action."  20 U.S.C. § 1415 (i)(2)(A) (emphasis added).  Plaintiffs can hardly be said to be "aggrieved" by the hearing officer's decision when it awarded them precisely the relief they sought (at least with regards to the services being sought in Count II of the Complaint).

Moreover, "[a] complaint alleging a public agency's failure to implement a due process hearing decision *must be* resolved by the [state education agency]."  34 C.F.R. § 300.152(c)(3) (emphasis added).  In Washington, D.C., the state education agency is the Office of the State Superintendent of Education.  In its policy and procedures manual, OSSE makes clear that "[a] complaint alleging that a public agency . . . has failed to implement a special education due process hearing officer decision resolving a due process hearing request *will be* reviewed and resolved by the [State Complaint Office]."  District of Columbia Formal State Complaint Policy & Procedures at 3, *available at*

---

[2] Plaintiffs allege that defendant has failed to reimburse them for the cost of B.D.'s tutor and occupational therapist as ordered by the hearing officer. *See* Am. Compl. ¶ 65; Pls.' Facts ¶ 154. Curiously, however, on July 26, 2012, plaintiffs filed a stipulation in this case, stating that "[p]ayments to B.D.'s tutor and occupational therapist for their direct services to B.D., that were billed directly to DCPS, are now current." *See* Stipulation ¶ 6 (July 26, 2012) [Dkt. #18].

http://osse.dc.gov/publications/specialized-education-state-complaints-policy-and-procedure.  As there is no cause of action under the IDEA to enforce a favorable decision from an administrative due process hearing, and the plaintiffs are not "aggrieved" as contemplated by the IDEA in authorizing judicial review of adverse due process hearing officer determinations, Count II is not properly before this Court.  *See Robinson v. Pinderhughes*, 810 F.2d 1270, 1273-75 (4th Cir. 1987) ("The plaintiffs here are not parties aggrieved.  Thus, the statute does not provide for their access to either the state or federal courts."); *S.G. v. District of Columbia*, 498 F. Supp. 2d 304, 311 (RMC) (D.D.C. 2007) (dismissing count seeking enforcement of HOD because plaintiffs had not exhausted their administrative remedies leaving the court without jurisdiction).[3]

In the Education of the Handicapped Act [EHA]—the predecessor statute to the IDEA—the Supreme Court made clear that "judicial review is normally not available under [the EHA] until all administrative proceedings are completed, but as we have previously noted, parents may bypass the administrative process where exhaustion would be futile or inadequate." *Honing v. Doe*, 484 U.S. 305, 326-27 (1988); *see also Cox v. Jenkins*, 878 F.2d 414, 419 (D.C. Cir. 1989); *Porter*, 307 F.3d at 1069.  Plaintiffs argue that they are excused from having to raise their complaints at the administrative level because such a challenge would be futile.  *See* Pls.' Reply at 19 [Dkt. #45].  Plaintiffs' futility argument as to Count II, however, is completely undermined by the fact that

---

[3] *But see Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 115-16 (1st Cir. 2003) (allowing plaintiffs to seek enforcement of favorable HOD); *Porter v. Bd. of Trustees of Manhattan Beach Unified Sch. Dist.*, 307 F.3d 1064, 1071 (9th Cir. 2002) (not requiring plaintiffs to exhaust administrative remedies before bringing action to enforce favorable HOD).

defendant has largely complied with all of the HOD directives that the plaintiffs seek to enforce. Accordingly, Count II is not properly before this Court and defendant is entitled to judgment as a matter of law.

## III.   Injunction

In Count III, plaintiffs seek "an injunction ordering the District, under the auspices of either DCPS or DMH, or both, as appropriate, to find an appropriate therapeutic residential placement for B.D. and to work with that facility to develop appropriate educational and treatment programs for him without further delay." *See* Am. Compl. ¶ 74. Due to events subsequent to the filing of the complaint in this case, these claims are now moot. B.D. has an updated and appropriate IEP that was completed in October 2012, recommending that he be educated in a therapeutic residential facility.[4] *See* Def.'s Cross-Mot. Summ. J., Ex. 1 (Oct. 2013 IEP) [Dkt. #41-1]. Moreover, the District has located an appropriate therapeutic residential treatment facility that has accepted B.D. and is capable of implementing his current IEP.[5] *See id.*, Ex. 3 (April 4, 2014 Eagleton

---

[4] Plaintiffs challenged this IEP in a due process complaint filed on April 8, 2013 (Case No. 2013-0211). *See* Amended Complaint, ¶ 63, *B.D. II*, Civ. No. 13-01223-RJL (D.D.C. 2013), ECF No. 6. Plaintiffs are challenging the resulting HOD that addressed this due process hearing in Counts III and V of *B.D. II*, Civ. No. 13-01223-RJL (D.D.C. 2013). *See id.* ¶¶ 82-85.

[5] The appropriateness of the residential therapeutic treatment facility identified by DCPS, the Eagleton School, is being litigated in *B.D. II*, Civ. No. 13-01223-RJL (D.D.C. 2013). This Court granted a preliminary injunction in that case pursuant to the "stay put" provision of the IDEA on November 19, 2013, finding that B.D.'s current educational placement was 1:1 home instruction. *See* 11/19/2013 Order, *B.D. II*, Civ. No. 13-01223-RJL (D.D.C.), ECF No. 16. Because home instruction was not possible, I ordered 1:1 instruction at Lindamood-Bell. *See id.* at 3. The ability of Lindamood-Bell to work with B.D. quickly broke down due to his violent outbursts and the inability of the staff to control his behavior. *See* Motion for Relief From Judgment, Ex. 1, *B.D. II*, Civ. No. 13-01223-RJL (D.D.C.), ECF No. 18-1 (correspondence from Lindamood-Bell regarding inability to continue working with B.D.). Accordingly, in *B.D. II*, the issue of B.D.'s current educational placement continues to be litigated. *See* Motion for Relief From

School acceptance letter) [Dkt. #41-3]. Thus, because plaintiffs' requested relief has already occurred, Count III of the Second Amended Complaint is moot.

## IV.   Attorney's Fees

In Count IV, plaintiffs seek $51,203 in attorney's fees and $183.05 in related expenses as prevailing parties in administrative due process Case No. 2012-0020. *See* Am. Compl. ¶ 77; Pls.' Mot. Summ. J. at 22. Under the IDEA, "the court, in its discretion, may award reasonable attorney's fees." 20 U.S.C. § 1415(i)(3)(B)(i). The District concedes that plaintiffs were prevailing parties in Case No. 2012-0020; however they contend that plaintiffs are not entitled to *all* of the fees they are seeking. *See* Def.'s Cross-Mot. Summ. J. at 26. Specifically, defendant argues that plaintiffs' attorney's rate of $390 an hour is unreasonable, and that she should only receive fees at a rate of $382.50 per hour.[6] *See id.* The District arrived at this figure by citing to a recent Memorandum Opinion in a case[7] before Judge Friedman, in which plaintiffs' attorney was awarded fees at three-quarters of the rate established by the *Laffey* matrix—or $382.50—due to the "simplicity" of the case.[8]

---

Judgment, *B.D. II*, Civ. No. 13-01223-RJL (D.D.C.), ECF No. 18; Motion for Order to Show Cause Why Defendant Should Not Be Held in Contempt of the Court's November 19, 2013 Preliminary Injunction, *B.D. II*, Civ. No. 13-01223-RJL (D.D.C.), ECF No. 23.

[6] Defendant does not challenge the hourly rates charge by Attorney Savit's colleagues, Ms. Becker and Ms. Smith, "because of their minimal involvement in Plaintiffs' case." *See* Def.'s Cross-Mot. Summ. J. at 26.

[7] *Blackman v. District of Columbia*, Civ. No. 97-1629, Memorandum Opinion and Order (PLF) (D.D.C. June 27, 2014) [Dkt. #2472].

[8] Judge Friedman described plaintiffs' claim in *Blackman* as being "presented and resolved in a relatively informal setting before the Special Master, and plaintiffs have not shown that the case involved complicated legal or evidentiary issues." *Blackman*, Civ. No. 97-1629, at 2.

The District argues that this is the appropriate rate at which plaintiffs' counsel should be compensated in this case. The lower rate would result in an award of $50,405.80 in attorney's fees. The difference in the fee calculation between the two rates is only $797.20. It should be noted, however, that the relevant *Laffey* rate used to arrive at the hourly rate of $382.50 in the case before Judge Friedman was $505 per hour, which is substantially higher than the $390 per hour claimed by plaintiffs' counsel here.

Plaintiffs argue that not only is a rate of $390 per hour reasonable, *see Bucher v. District of Columbia*, 777 F. Supp. 2d 69, 73 (GK) (D.D.C. 2011) (noting plaintiff bears the burden of showing that hourly rate and number of hours spent on tasks are reasonable), but also that the District conceded the appropriateness of the rate by previously paying plaintiffs' counsel at that rate for administrative-level work in this case. *See, e.g.*, *F.S. v. District of Columbia*, Civ. No. 10-01203 (EGS) (AK), Minute Order (D.D.C. March 25, 2013) (noting prior payment of fees at requested rates indicates agreement as to appropriateness of rates). Even assuming, *arguendo*, that defendant has not conceded the appropriateness of plaintiffs' counsel's rate, I find that the rate of $390 per hour is reasonable under the circumstances. How so?

To demonstrate that an hourly rate is reasonable, plaintiffs "must submit evidence on at least three fronts: the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community." *Jackson v. District of Columbia*, 696 F. Supp. 2d 97, 101 (RMU) (D.D.C. 2010) (internal quotation marks and citation omitted). Plaintiffs may show that the number of hours spent on a task was reasonable by "submitting an invoice that is sufficiently detailed to permit the

District Court to make an independent determination whether or not the hours claimed are justified." *Id.* (internal quotation marks and citation omitted).  Plaintiffs here have pled sufficient facts and attached sufficient documentation to support a finding of reasonableness for a rate of $390 per hour. *See* Pls.' Facts ¶¶ 164-179 (discussing plaintiffs' counsel's billing practices, skill, experience, reputation, and the prevailing market rates in the relevant community); Pls.' Mot. Summ. J., Ex. J8 (billing invoices detailing plaintiffs' attorneys' work on this matter, including numerous instances of counsel not charging plaintiffs for work performed) [Dkt. #38-51].  Based on the above, I find that plaintiffs' counsel's rate of $390 per hour is reasonable under the circumstances, and therefore grant summary judgment in favor of plaintiffs on Count IV.

## CONCLUSION

Accordingly, for all the foregoing reasons, the Court GRANTS summary judgment in favor of defendant on Counts I, II, and III of the Second Amended Complaint, and GRANTS summary judgment in favor of plaintiffs on Count IV of the Second Amended Complaint.  An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge